Case number 16-5248 Robert Medley v. Shelby County Kentucky et al. Oral argument not to exceed 15 minutes for plaintiff, 15 minutes to be shared by the defendants. Josian Alexander Pasolacqua for the appellant. You may proceed. Morning, Your Honors. May it please the court, like she I'd like to go into a little bit of background to elaborate on the pleadings itself. I think that laid out a pretty good amount of information on the brief itself. But this is a 1983 action in the District, Eastern District Court of Kentucky in Frankfort, where Judge Taten-Hoff presided. We claimed the 1983 action constitutional deprivations, deliberate indifference, and so forth in some state law claims. This is a matter where on June 9th of 2012, Mr. Medley was an inmate, a pretrial detainee, at the Shelby County Detention Center in Kentucky, Shelbyville, Kentucky. And around 530 p.m. that evening, he was in his cell. It's a cell with multiple other inmates. And very important to note that the cells had hot pots where you could boil water to the point of water could get to the scalding point. Where on 530 p.m., another inmate, Anthony Howell, for whatever reason, walked up to his bunk where he was laying down, threw scalding water on his face, hitting the left side, burning his left eye, left ear, part of his neck and shoulder and chest. So the jail staff responded. They separated them. They took Mr. Medley to the medical unit where Nurse Aldridge tended to him. Now, that night, Sergeant Doyle, I believe she's a lieutenant now, was the supervisor on duty. So everybody responds. He's taken to the medical unit and they treat him. Ms. Aldridge calls Dr. Waldridge and informs him of what she's observing. At that point, the burn seemed sort of superficial. So the doctor ordered cold compresses, put silvadene cream, which I guess is for the burn, and then given some ibuprofen. At around 645 that evening, Nurse Aldridge comes back to check on him. And at that point, things are getting worse. He's starting to swell up. He's starting to have problems seeing out of his left eye. So he's taking his pictures, calls her nurse on duty, Nurse Angel, and then Dr. Waldridge. And she takes the pictures to the doctor. Now, it's very critical because the doctor claims in his deposition to not recall getting those pictures. Well, Nurse Aldridge, and this was all cited on the pleadings, Nurse Aldridge was asked specifically, at her deposition, if she sent pictures. She said she did. And then more specifically asked, do you know if he got the pictures? And she said, I believe he did because he commented on them. So I think we're basically familiar with the facts. And the key question is, where was their error on the part of the district court in dismissing the various claims against the various individual defendants or the entities? Well, Your Honor, the error was in the fact that the issues as presented during the deposition created genuine issues of material fact for a jury to hear. Regarding what? Well, regarding the medical treatment. But why? The big question, isn't it, is whether this is arguably negligence on the part of the various people in not getting prompt treatment? Because ultimately, he was sent to the hospital and got full treatment at the hospital, ultimately. Well, and that's a key issue there is, when he did, he was sent to the hospital roughly about 13 hours later, or he arrived at the hospital 13 hours later, roughly. So, and the important issue is that at the doctor's deposition, he was shown Nurse Aldridge's progress notes and what she was writing. And he looked at that, and he's like, oh, had I known that description as it is written, I would have ordered him to the ER immediately. So the issue there is then, for a jury to consider, well, who dropped the ball? Was it the nurse? Dropping the ball or not? I'm sorry? Not just negligence, but deliberate indifference in order to make extra care. Well, yes, a deliberate indifference is the fact that, obviously, there was a serious medical need. They recognized that. But yet the doctor, and assuming that Nurse Aldridge was correct in her deposition and told the truth and said, yes, I described the injuries to the doctor as I wrote them down, sent pictures. But the argument is that the doctor just pretty much was indifferent about it. He was just like, well, just let's see if he gets any better. Let's just give him whatever local treatment we can. I guess you can surmise that perhaps they're trying to save money, and eventually realized that he should have been sent to the ER, and they did, 13 hours later. But when at 645 that evening, he was already in such a state that, obviously, a lay person could see this person needed medical treatment, like a while back, and not now. So is your argument, then, there are two possibilities. One is that the nurse did send the photos, and the doctor got them, but ignored them, and now is lying and saying he didn't get them. So under that scenario, there's deliberate indifference by the doctor. Or the second scenario is that the nurse is lying when she says she sent the photos, and that she should have sent the photos because the development of his burn injury is such that it was obvious that he had a very serious injury at an early hour, as opposed to later on. So either the nurse was deliberately indifferent, or the doctor was. And of course, we're using the word deliberately indifferent as a legal construct under Farmer versus Brennan, etc. Correct. But the thing is, you know, the nurse testified that she did send the pictures, she took the notes. So it's hard to believe that she would be that detail in her notes, but not send that very specific information to the doctor. The doctor probably just didn't pay much attention, because at his depositions, he says, well, I don't recall that. Then when shown the notes, he's like, oh, well, had I known that at the time, I would have sent him to the ER sooner. And then he even admitted that, yeah, those were second-degree burns. So somebody was deliberately indifferent there. Somebody dropped the ball. We could say that somebody didn't get your client prompt treatment. Prompt adequate treatment. Prompt adequate treatment. It was this de minimis treatment of giving ibuprofen and cold compresses. Correct. And like we stated in our brief, we had a jail expert that he looked at their regulations and their protocol and everything. And he said that the use of hot pots was probably not the best case scenario, and that the medical guidelines were probably not the best either, because as Sergeant Doyle testified at her deposition, she didn't want to come out and say it. But, you know, jail staff, they're tied to the decisions that Southern Health Partners makes regarding the medical treatment. Although she had previously admitted that she had sent in her deposition previously, and she was a former EMT, that's critical, that's crucial. So she has some advanced knowledge. And she knew, and she showed that concern. Do you mean that's essential to your case? Well, it's an issue for a jury to certainly consider, because she would have recognized having been a... I'm asking whether it's essential to the case or not. Whether she's an EMT? Well, I... If she weren't, your case would not stand? No, I think the case would still stand. However, I think that she has some additional knowledge that would probably what she should have exercised. I think in a negligence situation, I'm wondering, you agree that this is not a negligence, but rather a deliberate indifference standard? I would say it was deliberate indifference, definitely. But they were also... Required to be shown, right? But, you know, they were negligent as well. And that was part of the state law claim. However, where I was going with the fact that she's an EMT is that she knew that the situation was serious, but was deferring to SHP, Southern Health Partners, because of the policies of the jail. Although, in previous times that she testified her deposition, she had made her own decision out of her own volition to send inmates to the ER, even for non-life-threatening situations. But in this case, she deferred to the doctor. Eventually, the bottom line is that Mr. Medley eventually received treatment that should have been given to him sooner. Now, the Southern Health claims that, well, we did not have a medical expert. We can't change that fact. However, and I'd like to update the court on that one thing. We cited Tsitsima in our brief, which is a state case. It was the Kentucky Supreme Court has, last month, I think, granted discretionary review, so that case is still making its way over there in Frankfurt. So it's not a, has not been either affirmed or overturned. But I think where Tsitsima helps us is in the fact that Mr. Medley is perfectly capable of testifying as to his current injuries. And something to point out, too, is that Southern Health, they did not have them evaluated either. So they do not have a medical expert to rebut Mr. Medley's claim. So that's up to jury to decide. Those are involving state claims. Is that right? Well, those were part of what the district judge ruled in that we didn't have an expert to pursue our medical malpractice. But I think we have enough to go through. Did you appeal the district court's resolution of your state claims? Well, he dismissed those. Right. Did you appeal that? Well, we kind of alluded them on this. Well, I don't think we necessarily directly appealed that. So perhaps not. So that raises a question. Is there a final judgment in this case? I thought the case was still pending in the district court. There is. The claims against the inmate, Anthony Howell, the perpetrator, but the claims against Southern Health, Shelby County, and the individual Shelby County defendants, those have all been dismissed by summary judgment. So that... The case properly before us at this stage, if there is still pending a claim in the case, is there a sufficient 52B, whichever it is, 54B, excuse me, order from the district court to put this in our jurisdiction at this point? As far as the Southern Health partners defendants? The case is a case unless there is a sufficient 54B order in it. So that you would have to wait until the resolution of the entire case in order to come up. Well, if... You understand what I'm asking? I see. I understand what you're saying. But yes, we do have one defendant that's still active that we're still pursuing, and that's the inmate. Is this case properly here on an interlocutory appeal where that is... No, this is on a final and appealable order against Southern Health partners on their behalf, and also... That's what I'm asking you. Is that the case? Yes, it is. Is there a 54B order that puts it before us now? I believe so, yes. This matter... But the problem with the 54B order of the district judge here is that the district judge did not comply with our case requirements about explaining why there was no just reason for a delay. All the district judge did was parrot that language from the rule. Why shouldn't the final judgment requirement apply here? And we say that we don't have jurisdiction over this appeal because there are matters that are pending in the district court, and the district court failed to explain why 54B was satisfied. And obviously, Your Honor, I cannot answer why the judge, you know, chose to do it that way. I can say I don't even think the judge really looked at our briefs because we raised some issues that I don't think were really addressed in the brief. So... You don't have a particular response to the interlocutory jurisdiction issue? No, because... One way I can... I understand that one way this issue can be made to go away is if even as late as oral argument, you were to agree to dismiss the remaining claims, then there would clearly be appellate jurisdiction now. You don't have any inclination to do that or do you? Well, we do not have any inclination... The only remaining claim is against this other inmate, right? Well, all the claims... Is that correct? We claimed the assault and all those claims against the inmate and those are still pending. That is correct. My question is, is that the only additional claim? Correct. Correct. And my further question is, if either now or in the next few days, should you want to dismiss that appeal, I'm sorry, that case against the other inmate for whatever litigation reason you might want to do that, that would eliminate this concern, I believe under our precedence, about whether you presently have jurisdiction to raise this appeal. Am I making sense? I see where you're going, Your Honor. And now we can certainly, you know, talk about it and make that decision and, you know, submit whatever the court would wish us to submit. Well, we're not asking you to submit it. We're just, I'm just suggesting that if you did, that would eliminate this issue. Correct. I'm not saying how we would necessarily rule on that issue, but there is the issue. So we'll let you think about this in the future. It's obviously, we're raising this because jurisdiction is something that the court must look into. And if there isn't a truly final judgment, then we don't have jurisdiction over an appeal. And if the district judge didn't comply with Rule 54B properly, then we don't have jurisdiction. These are all ifs. I'm not saying, because we haven't ruled in any way as a panel on this matter. But if your claims against the inmate were not going to be producing any value to you, you know, if the inmate, for instance, were impecunious person and getting a judgment that he shouldn't have scalded your client, which is obviously nobody should scald anybody, then, you know, maybe that there's nothing worth pursuing. But we're not telling you what to do in any way. We are just raising questions, which is what we do here. Understanding. I'm sure he's probably in a prison somewhere. So your red light is on and we will give you, I don't know if you reserved any. I had reserved two minutes. Reserved two minutes. Okay. Thank you. Thank you. Morning, Your Honors. Morning. May it please the Court. I'm Chris Skadansky, Counselor for the Shelby County Defendants. You know, I just want to talk briefly about the qualified immunity with which the district court found in this case. I think at the outset, it should be mentioned that from a cursory review of plaintiff's allegations, it's a little bit difficult to determine in what manner my clients were deliberately indifferent to Mr. Medley. I think we can all agree that the majority of the claims here arise from the medical care and treatment. And with respect to that, the Court's right. This is a deliberate indifference claim, at least for purposes of the Section 1983 allegation, which requires the plaintiff to acquire two components, an objective component and a subjective component. We haven't argued the objective component because there's really no dispute. The man was burned. It was a second-degree burn, but rather the subjective component is what's paramount to the district court's finding a qualified immunity here. And under the subjective prong, there's two prongs that the plaintiff must establish and failed to do so before the district court. One, that the officer, my client, Sgt. Doyle, and I speak of Sgt. Doyle, even though there are ten other deputies named, she had the most hands-on interaction with Mr. Medley throughout this thing. But one, that Sgt. Doyle knew of a substantial risk of serious harm. But maybe more important than that, certainly maybe more imperative to the district court's ruling, is that she then disregarded that substantial risk of harm, of serious harm. And Your Honors, the undisputed facts of this case paint a picture that is completely an opposite of any conscious disregard, any reckless disregard of this man's well-being. She immediately responded to the scene. He was brought to medical. Excuse me. She put Mr. Medley in her SHP's care. She moved him to a cell that was close to medical so he could be consistently or constantly checked in on, assessed. Cell checks were done every 15 to 20 minutes. When the nurse went off duty, she moved him to a cell that was closer to, actually right next to the control center, so she could keep almost real-time eye on him. She followed every directive that the SHP gave her. Keep him hydrated. Bring him cold compresses. Make sure he's not in any kind of distress. And that's an important point. From the moment this happened up until the moment that Mr. Medley is removed, most, the vast majority of the cell checks, Mr. Medley was sleeping comfortably. He was laying down on his bunk or he was sitting up on his bunk. So she made sure to check in on him, make sure he was doing good. Doing well. And importantly, when his condition began to change in the early morning hours of the next day, she called the nurse soldier. She just went off duty. Gave her an update. When his condition progressed a little further, she called the supervising nurse Robinson. Gave her an update. She also took pictures so that the next nurse coming on duty at 6 o'clock in the morning could see what was going on in the situation. So your honors, these are undisputed facts that paint a picture that have little to do with deliberate indifference. But there were some other facts, as I recall, the photos on the phone were deleted. Is that right? Of Sergeant Doyle's phone. Is that right? That's correct. That's correct. So we don't know what those photos. We don't know what those photos show. Right. Right. A question that I have, certainly the way you've described the undisputed facts, she's called several nurses. Suppose now, hypothetically, suppose that a jailer sees that an inmate is deteriorating and when calling the nurse, the nurse says, just give them ibuprofen and, you know, wait until tomorrow. Does the jailer have any responsibility to get medical care more promptly than that nurse who's not there is telling the jailer to do? Well, I think in terms of responsibility, that would certainly depend on the facts of the circumstances of the situation. If what kind of distress he may have been in, what his pain scale level may have been, the condition of his face, obviously, and there's no doubt Sergeant Doyle was a trained EMT 15 years prior to she took employment with the detention center. But whether she was an EMT or not really has little to do with the deliberate indifference standard. If it may go to negligence, it may help support a negligence type claim. But we all know the U.S. Supreme Court has told us negligence does not make a deliberate indifference claim. So even if she knew that or should have known, I should say, that the man required a certain course of treatment or this kind of treatment is not actionable under the 14th Amendment. It may be under a state law negligence claim. And so that the duty of which you speak, Judge Moore, may kick in on the state law claim. You know, there's another component and I just mentioned it. I've got a minute left. I'll try to wrap up. Course of treatment, you know, in addition to this case being a negligence case disguised as a 1983 case, the plaintiff seems to take umbrage with the course of treatment that was provided him. And course of treatment is not actionable. The court has said so. We cited Gibson-Riggs, citing the Sixth Circuit and the Westlake decision. But wouldn't it depend on whether the course of treatment caused serious additional injuries, which I guess is the underlying assumption here that if he had been treated immediately, he wouldn't have had the long-term injuries that he may have had. Yeah, I mean, I think, Your Honor, we have to remember though that both plaintiff's expert has said that we followed our policy to a T. There's been no medical proof, frankly, that the progress of Mr. Medley's condition through the night at any point was neglected or not attended to. And I think to your point, when it became, when it got to that point that he would require an outside agency, emergency department to take a look at him, that's exactly what occurred. I know your time is ended, but my colleagues would indulge me for a probably irrelevant question. Why did they have hot pots in jail cells to begin with? Man, I thought I was going to get out of here without having to talk about hot pots. So with the hot pots, Your Honor, let me preface by saying the failure to protect. Never mind that. Okay. Okay. Why did they have hot pots in jail? In Kentucky, don't hold it against me, but it's the county jails for some low security inmates, drug offenders, I don't know, child support cases, people who are pretrial detainees, obviously, for nonviolent offenses, are provided these hot pots so that they can buy items at a canteen to warm up soup, to warm up coffee. And I understand it goes against our better judgment, but in our situation, there had never been an incident. Mr. Medley and Mr. Howell were actually buddies before this all went down. Mr. Medley never felt threatened in that cell. Friends like that, you don't need any enemies. I'm sorry to extend the thanks. I'm sorry. And before, because do you have any comment on the Rule 54B issue? Other than to say, I was looking through my file for the actual judgment to see if it contained the stock language that was required. It just has stock language. It doesn't have any explanation. Understood. Yeah. I would concur then with the court that if the plaintiffs are willing to let go of the Howell claim, Judge Rogers' point, this court would then retain jurisdiction. But beyond that, no, we don't really have an opinion, Your Honor. Thank you for your argument. Thank you, judges. If the court please, Robert Duncan on behalf of Southern Health Partners. Judge Moore, you hit on the salient point in the case with a comment that you made where the assumption is that had Mr. Medley gotten care in a more timely manner, the consequences would have been different. And that was exactly the point we were making with the district court is, you need proof of that. You need to have evidence of that. And there's no expert proof. There's frankly, even no lay proof in this that had any of these individuals done anything differently, that the consequences to Mr. Medley would have been different. Well, I suppose I'm just making things up now. He was in pain during this period and he was given ibuprofen, whereas if he were in the hospital, he would presumably have been given more successful pain medicine. Presumably being the key word in your question. There's a standard of care for medical providers. You need expert proof to establish what that standard of care is. Is the standard of care for a patient in Mr. Medley's condition to be given ibuprofen, which is what Dr. Is that below the standard of care? Is it the standard of care for a nurse who sees a patient who's been given ibuprofen and is not relieved to request further? Or when she observed him sleeping, was it appropriate for her to say that the prescription is sufficient? For deliberate indifference cases, we have a line of cases, the Blackmore line, which say that some things are so obvious that you don't need to have an expert. For 1983 deliberate indifference. Now, I understand that if we're dealing with negligence, we are that's a diversity state law. We have to follow whatever Kentucky is, but you could hypothesize that somebody who's got a bad burn. Ibuprofen is just not going to work and that that a lay person can figure that out. You don't need to have an expert to say that you could so let's jump to the deliberate indifference elements. Nurse Aldridge, Nurse Peach, Dr. Waldridge are not defendants before you. They were dismissed. They were not appealed. Southern Health Partners is the entity before you on the deliberate indifference claim. Their judgments, their decisions, their determinations are not part of the deliberate indifference claim. That was the negligence context. So with Southern Health Partners, we say, is there the objective component? Yes, we'll concede that. There's a serious substantial risk of medical harm or risk to Mr. Medley. So you go to the subjective. Did Southern Health Partners, the entity, have knowledge of that substantial risk and in some way consciously disregarded? Well, the courts have said in order to have an entity do that, we don't impute. It's not respondent superior. We don't look to what the individuals did. We look to what the entity did and did that entity have a pattern, a that shows that it in some way consciously disregarded Mr. Medley's conduct. There's no evidence whatsoever in this case that Southern Health Partners had any of those. What the appellant has suggested to the court is that perhaps there was a practice or a custom of Southern Health Partners that the nurse would have to call the MTA first before calling the doctor. That's what they've alleged in their brief. Even if that were true, one, you would have to show that that's a policy that somehow Southern Health Partners consciously adopted in order to subject a prisoner to an indifference level. But secondly, that's not what the nurse did in this case. She called the doctor directly. She didn't wait to call the MTA. She didn't wait to have any other direction. She called the doctor not once but twice.  health partners and moreover, there's actually a direct action by the nurse that suggests otherwise. So we would suggest to you that the deliberate indifference claim cannot stand against Southern Health Partners as the district judge found. And to clarify then, you are representing Southern Health Partners as the entity and none of your individual employees is the subject of this appeal. That is correct, Your Honor. I ask another clarifying question. You, in your brief, pardon me, these tables are slippery, spend several pages talking about the state malpractice issue and whether expert evidence was required. Correct. And that the district court was correct in that regard. But I'm wondering whether the other side is even arguing that on appeal. Are they? They have raised the issue and frankly, I didn't know if it was because they are trying to get the state court claims reinstated on negligence or if because they believe as a fundamental building block on deliberate indifference, you need to establish negligence and then gross negligence and then that land in between gross negligence. The latter is not raising the issue. I mean, if it's just a matter of part of their deliberate indifference claim, that's not the same as saying that the medical malpractice claim is still being made. I thought he basically conceded at oral just a few minutes ago that he was not raising that claim. I agreed with you until he brought up the distinction between the testimony of Nurse Aldridge and Dr. Waldridge as to what he knew and what he didn't know. And he said he would have done something differently. And when he goes to that discussion, it sounds like state court negligence claims to me. I guess I'm just asking what's in his briefs, but I guess I think he's already answered the question. So I just wondered why you didn't think that he declined to raise it, but you're just saying abundance of caution, I suppose. As an abundance of caution because the two can be intertwined. They are separate and distinct. I'd recognize that, but to the extent that you talk about the allegations that support the deliberate indifference claim, you could believe those supported a negligence claim, but I didn't want confusion there. I'll wrap up unless there's additional questions. Southern Health Partners would respectfully request this court affirm the decision of the District Court. Thank you. Thank you. Mr. Paz-Lacroix. Thank you, Your Honor. I just want to add a few more things. And as for the hot pods, those were removed and Sergeant Doyle testified that they were removed after the sentencing. I admitted at the very beginning my question is irrelevant now, but I confess a human curiosity that I was satisfying on that. Although our expert testified at his deposition that that would not be the best practice to do that. It's not the best practice to have had those in the first place. But as far as the deliberate indifference against Sergeant Doyle, under Wright v. Taylor, reckless disregard of his substantial risk of serious harm. And then under Westlake, willfully inadequate care is tantamount to deliberate indifference. Sometime at two in that morning when there were no nurses at the jail, she noticed that he was getting worse and she took pictures. And then at five in the morning, she called the incoming nurse before she was even at the jail yet to tell her, I have an inmate I need you to see. Now, as for Dr. Waldridge, and these are all employees of Southern Health, they're acting on behalf of Southern Health as an entity, but Southern Health is trying to shield themselves away from, well, individuals made decisions, not us as a corporation. Now, the doctor at his deposition, he testified, had I known at 645 that evening, what you're showing me now, I would have ordered him taken to the emergency room immediately. Now, that right there shows that he recognized that, oh, yes, at 645 that evening, he needed medical treatment at a facility higher than what was being provided at jail. As for his treatment and pain level, and let's not forget that Ms. Medley was complaining from the onset of pain level 10 out of 10, and ibuprofen obviously wasn't going to cut it. We don't need an expert to tell you that. All we need is somebody that has had pain at some point in their lives to realize ibuprofen won't cut it. When he got to the ER, they gave him some more powerful stuff that they can't give him at the jail because anything that's narcotic is not allowed at the jail. They don't have those kind of facilities for that. So, and with that, I think my time has stopped. One question. Yes, sir. So that it may be, if possible, easier for one of us to write this opinion. To make, to be clear, I know the question, I guess, was asked before, you are not raising on appeal state law malpractice. Is that correct? Other than as part of your arguments that are not safe. In a way, yes, we are. And I wanted to, I don't know. Where do you do that in your brief? But one other thing. I guess I failed to do that. But as for the jurisdictional issue, counsel has informed me that we did submit a motion for default judgment against Mr. Howell. And I think the judge has just pretty much put the case in abeyance and that has not, default judgment has not been granted. I understand. The question we were asking before is if you wanted to dismiss your claim, which is up to you. We will discuss it and perhaps go forward and dismiss it. I see. And as the portion of your brief, you cannot point to where in your brief you raised this issue. The other issue, the malpractice statement. I did not raise it as a specific issue. No, just part of the state law. That's not a very clear answer. Well, I raised it. In challenge on appeal, the court's denial of the state law claims. The court dismissed state law claims and dismissed federal law claims, right? There are different claims that the court dismissed. He did. You raise on appeal, challenging the dismissal of the federal law claims. Do you raise on appeal the dismissal of the state law claims? It's not maybe substantially. It's either yes or no. But I did raise the issue of the state law claims, which is where we brought our medical malpractice, but not as part of any kind of a federal claim. I was a little confused as to the question, but yes, we did raise the issue of the state law claims dismissal. I'm asking where you did that. I believe it was issue number five. Judge Rogers is asking in your appeal brief in front of us. He says issue number five. There are issues of fact, which should have precluded summary judgment on the municipal liability claim. And therefore, it's on those pages. Okay, we're going to look for it on those three pages. And then on issue number four, also that was against Southern Health, I believe. And then it may not have been as clearly raised. It looks like you're talking about 1983 when I take a quick look at those pages. But I think we'll be able to see from those three pages whether you raise that claim or not. Very well. Thank you all for your time. Thank you all for your argument. The case will be submitted. Would the clerk call the next?